U.S. v. Rodriguez-Ramirez. Counsel may proceed. Thank you, Your Honor. Good morning. May it please the Court, I'm Michael Bernays. I'm here on behalf of Maria Rodriguez-Ramirez. Thank you for having us this morning. Your Honor, I'd — Your Honors, I'd like to first address the issue about the motion for new trial, and I think that it's fairly clear that the resolution of that issue is going to turn on the characterization of whether we treat the inadvertent submission of a document which included sentencing information as the submission of extrinsic evidence, in which case, as the district court ruled the first time around, a new trial was warranted, or whether we treat it as simply an unobjected to submission of evidence, essentially my error for not catching it, in which case the government — or the district court's second order probably should hold certain There's one other question I want to add, not that you need to address it now. But I think that's a critical question. The one other I want to add is what difference it made. What's the source of prejudice, whether it's extrinsic or not? I think the source of prejudice, Your Honor, and I'd ask the Court to have some sympathy, and it's not endemic only to Arizona, but all along the border. There's a lot of concern about immigration. There's a lot of concern. We've seen your calendar this morning is full of immigration appeals. The concern, I think, and we did not get a chance — my motion to talk to the jurors was denied, so we didn't get a chance to explore whether there was actual prejudice. But I think the concern is that there may be people within the veneer in Arizona who would think that the court might not have that. But doesn't the conversation suggest — well, you say — I'm sorry. The form was put in, no question, and it appears everybody dismissed that reference. The conversation that is referenced, at least one of the two jurors appeared not — it didn't appear it had ever been discussed. It certainly was not raised in any proceeding or in argument, because nobody noticed it. So the one juror thought — the female juror responded, 20 years. So clearly that knowledge — and she had obviously come in on a guilty plea. So it didn't impact her, because normally what we get is if that comes in, it's the low amount of time that may influence them to find guilty. So it didn't — probably didn't impact her. The other juror seemed unknowing about what the potential penalties were. It doesn't even seem that that suggests — that that conversation, and there was the instruction to the jury that they were not to consider sentence. So if you combine all that, I tend to come back to Judge Sutton's questions, where's the harm? Well, I'll try and answer sort of all three of those questions, if I may. First, as to the one juror knowing it and the other doesn't, if we follow that statistical breakdown, it's at least possible that six knew and six didn't. I mean, just because one juror didn't seem to know, I don't think gives us reason to assume that the other ten that were not part of the conversation — But it certainly suggests it wasn't discussed. It suggests that he missed any discussion of it or tuned it out or hadn't been paying attention. Right. Would be my construction of that, Your Honor. The reason that I think it still is pertinent is my concern would have been, given the current emotional approach towards immigration and there are ranchers along the border that carry rifles everywhere because they want to keep people out, is that somebody might do just the opposite, rather than it's a low number, therefore let's convict her, it'll be okay, that their attitude could have been it's a high number, let's convict her and get her locked up so that she doesn't come across and so that she stands as a deterrence to other people that might try when they hear about it. In other words, a desire to be punitive might have driven — But why would that lead more likely to conviction? I mean, I think a person that has that mindset is not likely to say, well, she's only going to be locked up for five years, so let's let her go tomorrow, let's acquit her. I mean, I don't understand. That mindset of conviction, no matter what the sentence is, let's get her convicted for whatever term we can. So if that's the mindset, the sentence doesn't matter, they're going to convict just to get that person behind bars. Well, again, Your Honor, the — without talking to the jurors, we don't know what impact it did have. The concern was that it could have pushed the conviction factions within the jury. I think all of us who have done trials know that there are these factions that — Let's assume you had been allowed to question the jurors or to bring them in. Other than asking — I mean, the only thing you could have asked was, was it — presumably, what would you have asked? Was it discussed? Was it discussed? Yes, Your Honor. And that would be it. Yes. And so even if it was discussed, you're saying because — and then if you're saying your concern is this mindset, it seems to me, again, it has no impact. Well, I understand what the courts are saying. Without talking — I'm saying what you're saying. I mean, I'm assuming what you're saying is correct. Yes. Without talking to the jurors, we don't know. And what I wanted to do, and I would like to get on to the other issue, but I would like to offer an analogy that might clarify my point on this, that makes it more palpable, if you will, that this should be treated under that extrinsic evidence analysis. And that is, suppose instead of a document, we're talking about a piece of physical evidence, for example, a jacket. Suppose a jacket has been put into evidence. It has relevance. But in the pocket of the jacket is a packet of narcotics, and the jury finds that. And none of the parties wanted that in. And we assume they don't use them. And they report them to the bailiff, or it's found afterwards by the bailiff in going through the evidence after the jury's done with it. In that situation, I think we have a clear situation in which something has been submitted to the evidence without objection, inadvertent. I don't think either — But that would be evidence of a different crime. And I understand what you're saying. It might impact that crime. But here, the jury was specifically — you don't get an instruction, don't consider any evidence you may find in the jacket or the evidence. Here, don't we assume that the jury followed its instruction? This was at the bottom of a piece of paper. And they were instructed not to consider sentencing. Well, actually, Your Honor, I think they do get an instruction not to consider anything that hasn't been — You're right. You're right. That's true. But in this case, they were specifically — what I'm getting to is here, there was a specific instruction not to consider sentencing. There was, Your Honor. You're right. They're told not to consider things outside of the courtroom. But in your situation, it shows up in the courtroom. And they're not specifically instructed, you know, don't rifle the pockets. But here, they're specifically instructed, don't consider sentence, and don't we assume they followed it? We can assume they follow it, and we all know that that is an assumption. And legally, is that the assumption? Yes. It is. If I recall, law school days, they sometimes called those legal fictions, Your Honor, such assumptions. So if I may, if the Court has no other questions on that issue, I'd like to turn to the guidelines issue. In this case, Ms. Rodriguez-Ramirez's sentence was enhanced — her guideline calculation was enhanced under the guideline for having been previously convicted of a drug trafficking offense. The argument, of course, is that under Arizona law, the possession for sale criminalized by Arizona statute is over-inclusive, broader in its inclusions than is the guideline at issue. And therefore, under the Taylor categorical approach, we should not treat this as being a drug trafficking offense. And there was no end to that. And I'm not going to go into the details of that here, but for sale — I've had real trouble, and maybe a hypothetical or something will illustrate how it is that something that's knowingly possessed for sale doesn't really amount to be the same as intentional. Well, under Arizona law, there's quite a difference between knowing as a culpable mental state and intending. And one could be willfully ignorant, one could be completely ignorant of the purpose of the quantity of marijuana or narcotics or whatever other contraband there might be that you're possessing. Well, if you're ignorant, then I — you don't pass the knowing for sale test. Well, if you're — if you know that it — know or have reason to believe that it will be sold, but you don't care whether it's sold or not, you don't intend for it to be sold, then you don't have the purpose of sale. Then you don't have the purpose of sale. Then what you're saying is you don't have it for the purpose of sale. You know, well, maybe somewhere down the road it will be sold. But I'm not sure you would have — the question is, if you have the purpose for sale, how is that different from intent? Purpose is not part of the statute, Your Honor. Yeah. What does the word for mean? For is a preposition that relies upon the — the culpable mental state for its inflection. For usually, that kind of uses means for the purpose of. Your Honor, I understand that there are circumstances in which for sort of subsumes that idea of intent or purpose. But the Arizona case law constraining this statute does not so hold. Now, the State — Give us a case on that. I did, Your Honor. State v. Derosure is a case in which the Arizona Supreme Court had to look at the narcotic drugs, which is LSDs, barbiturates, et cetera, and the narcotic drugs are all exactly parallel in these — in their construction. It's just, you know, the object, be it marijuana, dangerous drug, or narcotic drug differs. So in Derosure, I believe it was narcotic drug statute, but as I say, it's exactly parallel to the marijuana statutes. Somebody wanted to argue that they should be entitled to assert an intoxication defense because it would rebut their intent to sell. And the Court held that's not permissible because under Arizona law, the intoxication defense is limited to those cases requiring specific intent, and this statute does not require intent. It only requires knowingly. Therefore, you can't use the intoxication defense. But in this context, haven't the Arizona courts, at least, under 13-3405, construed the elements to — and I'm talking about Salinas and Zarka — to say that the fourth prong possession includes possession of the substance for the purpose of sale? Yes, Your Honor. For the purpose, seems to me to suggest. That's — that's dicta in Strong and Arce. Right. The issue of the mens rea for that element is not directly at issue in either — I'm sorry, in — I should think the case you gave us was also dicta because they were denying the thing and they explained it in some way, but it was not a holding. No, Your Honor. It was specifically the holding because if it had required specific intent, then it was not a permissible defense. So in order to reach the conclusion that you are not entitled to a certain intoxication, they had to consider whether intent or knowledge was required. I said Strong earlier. I meant Salinas. Salinas and Arce, it's dicta. Strong, State v. Strong is the other case I cite. That's a court of appeals, Arizona court of appeals decision, also specifically addressed the mens rea requirement for that statute. And the point is, I see that I'm out of time, but the point, Your Honors, is that if, in fact, it is merely a knowing, and I think we have to honor State construction of their own law on this, if it's a merely knowing possession for sale rather than an intentional one, it is over-inclusive of what the guideline criminalizes or enhances sentence for. Thank you. Thank you. We'll hear from the government. May it please the Court. Good morning, Your Honor. My name is Fred Battista. I'm an assistant United States attorney with the U.S. Attorney's Office in the Phoenix office in Arizona. With respect to the first issue, I think one of the concerns the defendant brought up is the concern of, well, what were the potential prejudices of the members of the jury? And counsel and I tried this case. There was a very extensive veneer selection process before the trial. So the Court, we did make a significant effort to determine the possibility to root out if there were any potential prejudices among the jurors. And there was no evidence of that in the panel that was selected. When you look at the particular language of the penalty provision that was offered by the government, we're basically talking about one sentence in one of many exhibits that was offered. And the exhibit did not say the defendant is going to get 20 years. The exhibit says that depending on the circumstances, the defendant could get between 2 and 20 years. So there really is no, this is not a situation where it cuts against the defendant. It could cut either way. I mean, if it's a 20-year case, obviously that if the defendant is looking at 20 years, that's something that could garner sympathy for the defendant. If it's a two-year case, it's a felony case, it's obviously not as significant as a 20-year case. So it's not that significant. Yes, the government conceded error. It should not have offered it. But when we look at the defense, not at least entitled to find out if the jury discussed it. Your Honor, in light of the fact that the government considers this to not be extraneous evidence, in other words, this was disclosed to the defense prior to trial. It was in a marked exhibit. We offered it. It went in without objection. Before it went back to the jury, I personally offered defense counsel another opportunity to review all the exhibits to see if there was anything prejudicial. It went back. So I think when we're saying after everybody discovered the error. And I'm, everybody seems to be in agreement. This is just a mistake. Nobody picked it up and there was no intention. And hence, since it was a mistake, there was no objection. But once it was found out, whoops, we all messed up and we let this go in. We found out that at least one juror was aware of the 20. Why shouldn't the judge at least have been able to find out, at least, no, did they discuss it? Your Honor, initially, the parties both conceded that, well, let's call in the jurors and have this conversation. But in light of the fact that this is not extrinsic evidence, when we look at Rule 660, I think that there are very clear policy considerations where we don't want to discuss going into what went through the jury, what happened in terms of jury deliberations. And I think under Rule 660 in the case law, it's very clear that without any type of extraneous evidence or juror misconduct, we just don't go there. And I think that the policy is very longstanding in that regard. And having tried a number of cases and had the opportunity to talk to jurors after the did what they did, I can say from experience, I think it's a very good idea. Sometimes that's a disillusioning experience to find out exactly why they did what they did. Sometimes beyond disillusioning, it can be painful. But I wasn't even getting to how it impacted each juror, just whether or not it was discussed, to understand at least the breadth of the problem, not asking jurors, what did you think, or how did you do it, just was it discussed? That's an objective. Yes. And I think based on the conversation, the representations by defense counsel, it does not appear that it was discussed because the one juror had no idea what, you know, what penalty she was looking at. I'm not saying that this is the case, but should there be another category recognized? In classic terms, I don't you can't characterize this as extrinsic. It's an exhibit, for heaven's sakes. And yet it's an exhibit that nobody apparently picked up on, because there's no real dispute that it shouldn't have gone in in that fashion. And I've tried cases. I can't say I've scoured every corner of every page of every document that went in. It happens. And so it's not literally extrinsic, but should it be considered kind of the functional equivalent of extrinsic, because it wasn't intended to be before the jury. It's as if somebody happened to find a piece of paper lying on the floor and read it. It just made its way into the jury room. You're right. You know, when I deal with all of my cases, I approach things with the concept of fundamental fairness. That's why I initially agreed to calling the jurors back to talk to them, because, you know, that's what this whole system is all about. And I just, in light of 660 in the case law, I didn't see an opportunity. But I would concur that if there had perhaps there been an amendment or something or the opportunity, I would have agreed to it. And as So basically your position on this is the lesson to be learned is read every word of the exhibits. Yes, Your Honor. And in this case, as the court asked my defense counsel in this case, really, what is the harm in this case? When we look at, there really is no substantial impact on this case. It's one sentence. When you look at the record, the evidence in this case was overwhelming. Clearly, the jury did not find the defendant credible or her mother credible. The court made a specific finding that he did not find her credible. The government offered extensive documentary evidence, and the defense basically offered just testimony. And it's the government's position in this particular case, there was no plain error. There is no impact on the judicial system, and there should not be a retrial of the case. And if we did retry the case, we've discussed, you've discussed judicial economy throughout the morning, a retrial of this case would create the exact same result. With respect to the other issue, defense cites several cases. One of the cases, the Derosier case, which he cites, is a simple possession case. So in that particular case, the defendant sought to raise a defense of specific intent, but it was just that defendant was only charged with possession of a narcotic drug. Here we have a defendant charged with possession of a narcotic drug for the purpose of sale. Defendant argues in the Arce and the Salinas case that the elements are dicta. I would not couch them as dicta. This Court, in numerous cases, in all the circuits, have at times flushed out the elements of a statute in order to sufficiently notify the parties of the burden in the case. And I believe that the Supreme Court in Arizona has done that, flushed out specifically what the elements are of the state statute. And the state statute specifically requires a knowing possession of the drug for the purpose of sale. There's no other way to violate this statute. If you knowingly possess the drugs and there's maybe kind of somebody later on down the road is going to sell them, you're not going to violate this statute. You have to knowingly possess the drugs for the purpose of sale. But you say you would violate it if you held them not for possession or not for sale. You knew you were going to give them to somebody and if you had 200 or 300 pounds of it, would you say, I have it, I know I'm going to give it to someone else and I know they're going to sell it, then do I violate it or not? Not this particular statute because this is actually going to involve this statute. This is not knowing possession with the intent to distribute. This is knowing possession with the intent to sell. Sell. And Well, for purpose of sale. Purpose of sale. If I know it's going to be sold under the Arizona law, do I violate because I know it's purpose. The purpose is for sale and I'm just, I'm not going to sell it, but I know it's going to be for sale. I'm talking about under Arizona's I think, Your Honor, then we get into constructive possession and the issues of Prinkerton and aiding and abetting and all that. So it would depend. In other words, is this a joint enterprise? I got my yellow light up. But so in looking at all the cases, the defendant cites all the state cases, the state cases in the defendant's brief is basically dancing around the issue because they're looking at the elements and the requirements regarding culpability, not from the direction of the statute that's at issue at this case. And when you look at those state statutes and look at the cases that the defendant cites, they're not addressing the specific issue that's the issue in this case. And I think that the government's cases and the Arizona Supreme Court cases and also the cases that the defendant cites, Benitez-Perez case, the Nevada statute, it's almost a mirror image of the Arizona statute where this Court has found that it satisfies the requirements for an aggravated felony. There not being any more questions, I have nothing further. Thank both counsel for the argument. One minute. I'd like the Court before it makes a final decision on this case to take a look at the Arizona statute itself. It does not use the language for the purpose of sale. It simply says for sale. And I'd also ask the Court to look at the Arizona statute as a fourth prong. Hasn't Arizona construed that to mean for the purpose of sale? Well, in that, in the Arce case, in the Salinas case. And you may say whether it's dicta or not, the Court is elucidating the components and the elements, is it not? Yes. And it's also elucidated them to not include the word purpose. And I'd also ask the Court to take a look at 13-202A, which is the Arizona statute cited in my brief, which applies. It says if a culpable mental state is sufficient for one element, then it applies to all of the elements unless there's a specific contrary legislative purpose. Thank you very much, Your Honor. Thank you. The case just argued is submitted. And we move to the final case in this morning's calendar, NASD Dispute Resolution Inc. v. Judicial Counsel. Appreciate your patience. It's just the nature of things that somebody's listed last, and it's your privilege today.
judges: Noonan, Clifton, Schiavelli